655 Third Avenue, 12th Fl.
New York, NY 10017

T: 212.370.0330
www.pkbllp.com

Petrillo Klein + Boxer LLP

NELSON A. BOXER
nboxer@pkbllp.com
D: 212.370.0338
M: 917.273.2693

MEMO ENDORSED, last page.

October 28, 2026

**BY ECF**
Hon. Edgardo Ramos
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

**Re: *United States v. Liaw et al.*, 26 Cr. 100 (ER)**

Dear Judge Ramos:

We represent Yih-Shyan "Wally" Liaw in the above-referenced matter and respectfully write to request an adjournment of the March 29, 2027, trial date to June 1, 2027, or to a later date convenient for the Court, in order to ensure that the defense has sufficient time to review the government's Rule 16 discovery.[1] An adjournment is warranted because the government's discovery to date is voluminous (and continuing), consists of technologically complex data types, and includes a substantial amount of foreign-language material that cannot be effectively reviewed solely based on machine translation.

We have met and conferred with the government but were unable to reach agreement on a date for a proposed new trial. The government is agreeable to a five week adjournment and informed us that two of the AUSAs working on this case have trials presently scheduled during the Summer.

## I. The Government's Discovery to Date Is Voluminous and Technologically Complex

An adjournment is warranted because, since the June 10, 2026, status conference – during which the March 29 trial date was set – the government has produced a substantial volume of foreign language discovery (specifically, Chinese and Thai) and data in numerous non-standard

[1] The government represented to us on October 16 that it estimates needing less than two weeks to present its case-in-chief. The defense is unable to estimate the length of its case, if any, until it understands the identity of the government's witnesses and exhibits.

file formats that have required significant time and technical effort to access, process, and review. Discovery of this type is continuing.

The government's discovery, most of which has been produced after June 10, consists of the following categories of data.

- *Investigation, Arrest, and Government Materials.* The government's initial production consisted primarily of FBI materials related to the investigation and arrest of Mr. Liaw and materials from the U.S. Bureau of Industry and Security. Notably, this also included a 36,203-row excel spreadsheet of machine-translated communications between Mr. Liaw and co-Defendant Willy Sun. In total, this category accounts for 10,073 documents.

- *Forensic Extraction of Electronic Devices and Accounts*. The government produced 1,130 GB of data consisting of Mr. Liaw's iPhone 16, iPhone 17, Apple iCloud Account, and Google Account, which, after forensic extraction, yields over 2 million documents.[2] This consists of Mr. Liaw's instant message communications on various instant messaging applications such as SMS Text Messages, iMessages, Line, WeChat, Telegram, and voice notes, calendar invitations, photos, contacts, and call logs, among other things. Moreover, because Mr. Liaw primarily communicates in Chinese, 600,827 instant message communications have been machine translated thus far, a process that is ongoing. Several months later, on August 18, the government produced 188 GB of data from co-defendant Willy Sun's iPhone, two Google Accounts, Apple iCloud Account, and laptop, which are still being processed but has yielded over 130,000 documents thus far. Many of these documents and communications are in Chinese and require translation.

- *Third Party Production Materials*. 225,554 documents from the government's discovery derive from 21 different third parties, and critically, approximately 19,000 are from Company-1 and approximately 148,000 are from U.S. Manufacturer-1, entities that are each referenced repeatedly throughout the Indictment.[3] It is our understanding that the government has not yet finished producing documents it expects to receive from third parties.[4]

---

[2] Although the government produced data from Mr. Liaw's devices and accounts with communications dating back to December 17, 2014, the above quantity is only data extracted from those devices and accounts between September 1, 2023, and March 19, 2026. Additionally, the total includes some duplication of chat messages: to maximize translation accuracy, each individual chat message is extracted and processed as a separate document for translation; following translation, the messages are reconstructed into 24-hour conversation segments, which our database recognizes as individual chats and a single document, one in English and one in Chinese.

[3] The government produced more discovery from U.S. Manufacturer-1 on October 27, 2026, which we are still loading and has not been included in this count.

[4] We have asked the government repeatedly since May 13 about future discovery it expects and when it will be complete. On October 26, the government indicated that it expects U.S. Manufacturer-1 to

- *"Identified Data."* The government produced 15,435 documents that it identified as responsive to warrants that authorized the search of devices and accounts seized on March 19, 2026, from Mr. Liaw and other individuals and locations. The government has indicated that the government's review is ongoing and may generate future productions.[5]

## II. The Volume of Discovery Has Increased Dramatically Since the Trial Date Was Set

At the June 10 status conference, the government advised the Court that it had produced 1.35 terabytes of discovery. Tr. 3:11–15. Since then, the volume of discovery has climbed to nearly 2 terabytes. In response to the Court's inquiry about remaining discovery, the government stated that any outstanding materials would primarily consist of third-party productions, which it would turn over promptly if discoverable, and represented that "the bulk of discovery has been produced to date," with discovery mainly coming from Mr. Liaw's own devices and accounts. Tr. 6:16–7:10.

Since then, the government has mostly produced discovery obtained from Company-1, the U.S. Manufacturer, and another critical third party involved in GPU manufacturing, all likely sources of critical witnesses. Of roughly 148,000 documents from the U.S. Manufacturer, 124,778 were produced after the June 10 status conference. Of roughly 19,013 documents from Company-1, 7,328 were produced after that date. And while the government has now produced 2,966 documents from the above-referenced third party, only eight documents had been produced when the trial date was set. These figures do not include the extensive production from Mr. Willy Sun's devices.

Although the government and the defense may have received much of the third party discovery on a similar timeline, the government has a significant, practical advantage: assistance from cooperating witnesses and entities, including Company-1, who can identify, locate, and explain the most relevant communications and documents. The defense lacks any comparable resource – with respect to material not sourced from our client's phones – and must sift through thousands of documents and communications to identify materials that may be relevant and material to the preparation of its defense. Consequently, the burden of discovery review falls far more heavily on the defense.

---

complete its discovery production to the government this month, but also anticipates additional third party productions and further Rule 16 discovery.

[5] The government produced additional Identified Data on October 27, which we are still loading and is not included in this count.

### III. The Nature of the Discovery Has Presented Unique Challenges to the Defense That Justify an Adjournment

The burden on the defense is further compounded by the nature of these productions. As described above, they contain a substantial volume of documents and communications written and spoken in Chinese, as well as numerous materials in Thai. Addressing these issues has required significant time and resources, as the process depends not only on labor-intensive troubleshooting by consultants and counsel, but also on machine-processing workflows and system limitations that are beyond the defense's control. Moreover, Chinese-language communications frequently depend upon context to convey the accurate meaning of the written characters, and that challenge is amplified here because Chinese and English words are often interspersed within the same sentence or conversation, which makes machine translations unreliable, including with respect to critical verbs and nouns. We consistently encounter these limitations, and the need for careful validation and correction, when reviewing machine translations provided by the government.

Another obstacle to the defense's review of the data from Mr. Liaw's and Mr. Willy Sun's accounts and devices is the manner in which the data was produced. The chat communications contain a substantial number of attachments, including voice recordings, screenshots, photographs, and other attachments in non-conventional file types (*e.g.*, amr, BIN, .caf, json, .silk, and trust_token) that are critical to understanding the conversations in their entirety. These materials were not produced in a format that can be reviewed using standard eDiscovery software or ordinary computer applications; our retained vendor developed a customized process to convert and view some (but not all) of them. Because these attachments often provide essential context for the corresponding messages, the defense must forensically extract and convert them into a usable format to meaningfully evaluate the evidence.

Finally, the length of the requested adjournment reflects the time the parties will need to exchange case-in-chief exhibits and translations, review of those translations, and either agreement on translations or engaging the Court on the issue.[6] Settling on disputed translations is likely to become a time consuming exercise, and as a result, we request that the Court set a deadline for the exchange of translations of case-in-chief trial exhibits (including the original document and the translations that the government intends to present to the jury) well in advance of the trial date. Similarly, we further request that the Court set a schedule for any motions regarding 404(b) evidence, experts, and any other *in limine* motions, and that it schedule the production of 3500 material well in advance of the trial date.

***

---

[6] Our pretrial motions included requests for a bill of particulars, including the identity of all co-conspirators, and the disclosure of grand jury materials. If granted, the defense would need additional time to review the information provided, which could lead to further motion practice.

For the reasons set forth above, the defense requires additional time to complete its review of the government's discovery, which is ongoing, and provide an informed defense of Mr. Liaw. Accordingly, we respectfully request that the Court schedule trial to begin on June 1, 2027, or on a date thereafter, and that the Court order a schedule for trial exhibits, trial motions, and production of 3500 material.

Respectfully submitted,

Nelson A. Boxer
Guy Petrillo
David Hoffman
Eliza Simons
Petrillo Klein + Boxer LLP
655 Third Avenue
12th Floor
New York, NY 10017

-and-

Jason Liang
Jennifer Chor
Liang Ly LLP
601 South Figueroa Street
Suite 1950
Los Angeles, CA 90017

Trial is adjourned to May 3, 2027, at 10 a.m. The final pretrial conference scheduled for March 25, 2027, is adjourned to April 29, 2027, at 2:30 p.m. Proposed jury instructions, proposed voir dire questions, proposed verdict sheet, and any motions in limine are due April 5, 2027. Responses are due April 19, 2027. The parties are directed to submit a proposed joint schedule for any other deadlines. Speedy trial time is excluded from March 29, 2027 until May 3, 2027, in the interest of justice.

SO ORDERED.

Edgardo Ramos, U.S.D.J.
Dated: 11/17/2026
New York, New York